# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ANDREA SOMMERS and HARRY SUEISHI, as Guardians of EDITH SELF, an Adult Ward, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL C. CUDDY, JR., individually and as President, Secretary, Treasurer, and Director of Personnel Benefits Group, Inc.; PERSONNEL BENEFITS GROUP, INC., a Nevada Corporation d/b/a Personnel Benefits Group and Retirement Benefits Group; AVIVA USA CORPORATION, an Iowa corporation, f/k/a and/or d/b/a Amerus Group Co.; AVIVA LIFE AND ANNUITY COMPANY, an Iowa corporation, f/k/a and/or d/b/a Amerus Life Insurance Company, AMERUS ANNUITY GROUP CO., a Kansas corporation; AMERICAN INVESTORS LIFE INSURANCE COMPANY, INC., a Kansas corporation; NATIONAL WESTERN LIFE INSURANCE COMPANY, a Colorado corporation; DOE DEFENDANTS I-XXX; ROE CORPORATIONS I-XXX, inclusive. <br><br> Defendants. | 2:08-cv-00078-BES-RJJ <br><br> **ORDER** |

Currently before the Court is Defendants Daniel C. Cuddy, Jr. ("Cuddy") and Personnel Benefits Group, Inc.'s ("PBG") Motion to Compel Arbitration and Stay Proceedings (#36) filed on May 8, 2008. Plaintiffs Andrea Sommers and Harry Sueishi, as Guardians of Edith Self, an Adult Ward (collectively referred to herein as "Plaintiffs") filed an Opposition to Motion to

///

Compel Arbitration and Stay Proceedings (#40) on May 28, 2008. Cuddy and PBG filed a Reply (#60) on September 2, 2008.

Also before the Court is Defendants Aviva USA Corporation, Aviva Life and Annuity Company, Amerus Annuity Group Company, and American Investors Life Insurance Company, Inc.'s (collectively referred to herein as the "Aviva Defendants") Motion to Compel Arbitration and Stay Proceedings (#43) filed on May 30, 2008. Plaintiffs filed an Opposition to the Aviva Defendants' Motion to Compel Arbitration (#50) on June 20, 2008, and a Supplement to their Opposition (#52) on June 27, 2008. The Aviva Defendants filed a Reply (#56) on July 7, 2008.

Defendant National Western Life Insurance Company filed a Joinder to the Motions to Compel Arbitration and Stay Proceedings filed by Cuddy, PBG and the Aviva Defendants (#49) on June 11, 2008.

## BACKGROUND

Plaintiffs filed a Complaint (#1) in this action on January 18, 2008. In their Complaint, Plaintiffs assert that they are seeking to "halt the use of unfair and abusive practices by Defendants in marketing and selling unsuitable annuity policies to senior citizens." (Complaint (#1) at 2). According to Plaintiffs, "Defendants designed a scheme specifically to exploit and prey upon the finances of vulnerable senior citizens." Id. Plaintiffs further assert that "Defendants accomplished their scheme by utilizing the deceptive marketing of estate or financial planning services in order to obtain the seniors' financial information." Id. Allegedly, "Defendants would then target them as prospective purchasers of deferred annuities and life insurance policies." Id.

Plaintiffs assert that Defendants' alleged fraudulent scheme began to target Edith Self ("Self") in 1999. Id. at 5. According to Plaintiffs, Cuddy and PBG "identified [Self] as a lonely, mentally unfit, elderly widow, with no immediate family members." Id. Thereafter, according to Plaintiffs, the Defendants "began a sophisticated and fraudulent scheme to defraud Self by gaining her trust" with the purpose of gaining access to "Self's substantial assets and property." Id. Based on these allegations, Plaintiffs asserted claims for: (1) violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq.; (2) violations of Nevada consumer protection laws; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) bad faith; (6) fraudulent misrepresentations; (7) negligent misrepresentation; (8) fraudulent inducement/fraud; (9) civil conspiracy; and (10) unjust enrichment.

The Defendants have now moved to compel arbitration and stay the proceedings in this matter based on a written agreement to arbitrate between the parties and pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

## ANALYSIS

In the Defendants' motions to compel arbitration and stay the proceedings, the Defendants argue that this Court should compel arbitration in this case because all of Plaintiffs' claims and causes of action are covered by arbitration provisions set forth in various agreements entered into by Self. (Motion to Compel Arbitration and Stay Proceedings (#36) at 5). In this regard, Defendants assert that "Self expressly agreed to arbitrate 'all controversies' with Defendants, her transactions with Defendants, or the construction, performance, or breach of the agreements with Defendants." Id. at 8. Thus, the Defendants assert that arbitration is necessary in this matter because: (1) a valid written agreement to arbitrate exists; (2) the dispute between Plaintiffs and Defendants fall within the scope of the arbitration agreement; and, (3) there are no external constraints that foreclose enforcement of the parties' arbitration agreement. Id. at 7.

In response, Plaintiffs argue that Defendants' motions must be denied because "Defendants coerced an elderly, mentally unfit woman to sign and invest in life insurance policies despite obvious diminished capacity." (Opposition to Motion to Compel Arbitration and Stay Proceedings (#40) at 4). As a result, according to Plaintiffs, any signed agreement entered into by Self is put "automatically into question and under intense suspicion." Id. In addition, Plaintiffs assert that the Federal Arbitration Act does not apply to the agreements at

///

///

3

issue in this matter. Id. at 6. In this regard, Plaintiffs assert that the annuities and life insurance contracts Self entered into with Defendants do not "involve commerce" as used in the FAA. Id.

As noted in the foregoing, Defendants have moved to compel arbitration pursuant to the FAA and the alleged agreements entered into between the parties. The purpose of the FAA is to encourage alternative dispute resolution outside the courtroom, and "to ensure 'judicial enforcement of privately made agreements to arbitrate.'" Sink v. Aden Enter., Inc., 352 F.3d 1197, 1201 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)). According to the Ninth Circuit, the FAA mandates that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008). As a result, the FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Id.

"Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." Id.; see also 9 U.S.C. §2; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443-44 (2006). Under that provision, "arbitration clauses in contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. §2). The Supreme Court has recently clarified that contract based challenges to the validity of arbitration agreements come in two types: "[o]ne type challenges specifically the validity of the agreement to arbitrate" and the "other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Buckeye Check Chashing, 546 U.S. at 444. According to the Supreme Court, challenges to the contract's validity are considered by the arbitrator in the first instance. Id. "Where, however, 'the crux of the complaint is . . . the arbitration provision itself, then the federal courts . . . must decide whether the arbitration provision is invalid and unenforceable.'" Cox, 533 F.3d at 119 (quoting Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007)).

In their motions to compel arbitration, Defendants have provided evidence of agreements signed by Self that contain arbitration clauses. (Motion to Compel Arbitration and Stay Proceedings (#36) at Exhibits A, B, and C). These agreements were executed by Self in 2002 and 2003. Id. Directly above Self's signature on the New Account Application is the following language: "I hereby acknowledge that I am in receipt and have read, understood and agreed to the terms set forth in the customer agreement and that this account is governed by a pre-dispute arbitration agreement which I have read and understand." Id. On the Account Information form signed by Self there is a provision which states that "[t]his account is governed by a pre-dispute arbitration clause, which is found on page 8 of the customer agreement. I acknowledge receipt of the pre-dispute arbitration clause." Id. at Exhibit B, p. 5. In addition, the FAP Client Agreement includes an arbitration paragraph in which Self "agrees that all controversies that may arise between the parties concerning performance or breach of this Agreement, or any other agreement, between the parties, whether entered into before, on, or after the date this Account is opened shall be determined by arbitration before a panel of independent arbitrators." Id. at Exhibit C, p. 5.

In their opposition, the Plaintiffs assert that these arbitration clauses should not be enforced because Self was "mentally unfit" to enter into the agreements and that the entire agreement is in "question and under intense suspicion." (Opposition to Motion to Compel and Stay Proceedings (#40) at 4). In addition, Plaintiffs assert that "[t]he entire agreement, including the arbitration agreement, was executed by Plaintiffs after an inducement based on fraud." Id. at 7. As such, Plaintiffs assert that Self "lacked mental capacity to enter into a contract" and thus, the arbitration provision is void.

It is clear from Plaintiffs' argument that Plaintiffs are challenging the enforcement of the contract as a whole and not just the arbitration provision. Specifically, Plaintiffs have argued that Self lacked the mental capacity to enter into any of the agreements at the time they were executed, and that Self was coerced into signing the agreements.[1] However, according to the United States Supreme Court, "unless the challenge is to the arbitration clause itself, the issue

---

[1] Self's mental capacity at the time she entered into the agreements is disputed by the parties.

5

of the contract's validity is considered by the arbitrator in the first instance." See <u>Buckeye Check Chashing</u>, 546 U.S. at 444. Thus, a federal court is not permitted under the FAA to consider such claims as fraud in the inducement of the contract generally.[2] <u>Id.</u>

Thus, based on the foregoing, this Court must direct the parties to proceed to arbitration on the claims asserted in Plaintiffs' Complaint. Even though the validity of the actual contractual agreements is at issue, there is an arbitration clause in the disputed contracts that encompass the claims asserted in this case.[3]

In addition to the foregoing, Plaintiffs argue that the arbitration clause should not be enforced because the FAA does not apply to the agreements at issue in this litigation. (Opposition to Motion to Compel and Stay Proceedings (#40) at 6). In this regard, Plaintiff asserts that the contracts do not involve interstate commerce or a maritime transaction. <u>Id.</u>

The FAA applies to all maritime transactions and all transactions "involving commerce." 9 U.S.C. §2. In <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265 (1995), the Supreme Court considered the scope of section 2 of the FAA. See <u>Rogers v. Royal Caribbean Cruise Line</u>, 547 F.3d 1148, 1154 (9th Cir. 2008). "The Court examined the phrase 'a contract evidencing a transaction involving commerce in two steps." <u>Id.</u> "First, the Court noted that the words 'involving commerce' . . . are broader than the often-found words of art 'in commerce.'" <u>Id.</u> "The Court held that the phrase 'involving commerce' is the 'the functional equivalent of' the phrase 'affecting commerce,' which 'normally signals Congress' intent to exercise its Commerce Clause powers to the full." <u>Id.</u> "Second, the Court considered the language 'evidencing a transaction' involving commerce." <u>Id.</u> "The Court read this phrase

---

[2] In <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967), the Supreme Court held that "if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the making of the agreement to arbitrate - the federal court may proceed to adjudicate it." But, continued the Supreme Court, the statutory language of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." <u>Id.</u>

[3] In <u>Buckeye Check Cashing</u>, the United States Supreme Court affirmed that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 546 U.S. at 449. The Court noted that the rule "permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void," but noted that "it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." <u>Id.</u> The Court noted that it resolves such a conundrom "in favor of the separate enforceability of arbitration provisions." <u>Id.</u>

1  broadly, holding that the transaction must involve interstate commerce, but that the parties to
2  the transaction need not have contemplated that the transaction had an interstate commerce
3  connection." Id.

4  As noted in the foregoing, the phrase "involving commerce" under the FAA is to be
5  interpreted broadly. In their motion, the Defendants provide evidence that the annuities and
6  insurance policies purchased by Self and at issue in this matter were issued by a variety of
7  companies that are not residents of Nevada. As a result, these transactions involve interstate
8  commerce.

9  Plaintiffs argue that Defendants' assertion that the sale of annuities and life insurance
10 policies involve interstate commerce is a "ridiculous leap," and is "preposterous and
11 overstepping to say the least." (Opposition to Motion to Compel Arbitration (#40) at 6).
12 However, in Plaintiffs' Complaint, Plaintiffs expressly assert that: "Each of the Annuity and Life
13 Insurance Enterprises engages in and affects interstate commerce because they each engage
14 in activities across state boundaries, such as the marketing, promotion, advertisement and
15 sale of inappropriate deferred annuity and life insurance products to senior citizens . . . ."
16 (Complaint (#1) at 9). Thus, based on Plaintiffs' own analysis of federal jurisdiction,
17 Defendants' activities and the contracts they are based on involve interstate commerce and
18 the FAA applies.

19 In addition to seeking a motion to compel arbitration, the Defendants have also moved
20 to stay the proceedings in this matter. Section 3 of the FAA provides for a stay of legal
21 proceedings whenever the issues in a case are within the reach of an arbitration agreement.
22 9 U.S.C. §3. Because the claims asserted in this case are within the arbitration provision, a
23 stay is appropriate to allow the parties to proceed with arbitration.

24 Finally, Plaintiffs moved for sanctions in their oppositions to the motions to compel
25 arbitration on the basis that the Defendants' motions "were disingenuous and frivolous."
26 (Opposition to Motion to Compel Arbitration (#40) and (#50)). Because the Court grants the
27 motions to compel arbitration and stay the proceedings, the motions for sanctions are denied.
28 ///

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Daniel C. Cuddy, Jr. And Personal Benefits Group, Inc. Motion to Compel Arbitration and Stay Proceedings (#36) is GRANTED.

It is further ORDERED that Defendants Aviva USA Corporation, Aviva Life and Annuity Company, Amerus Annuity Group Company, and American Investors Life Insurance Company Inc.'s Motion to Compel Arbitration and Stay Proceedings (#43) is GRANTED.

It is further ORDERED that National Western Life Insurance Company's Joinder to the Motions to Compel Arbitration and Stay Proceedings (#49) is GRANTED.

Dated this 30th day of March, 2009.

United States District Judge