# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ANDREA SOMMERS and HARRY SUEISHI, as Guardians of EDITH SELF, an Adult Ward,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL C. CUDDY, JR., individually and as President, Secretary, Treasurer, and Director of Personnel Benefits Group, Inc.; PERSONNEL BENEFITS GROUP, INC., a Nevada Corporation d/b/a Personnel Benefits Group and Retirement Benefits Group; AVIVA USA CORPORATION, an Iowa corporation, f/k/a and/or d/b/a Amerus Group Co.; AVIVA LIFE AND ANNUITY COMPANY, an Iowa corporation, f/k/a and/or d/b/a Amerus Life Insurance Company, AMERUS ANNUITY GROUP CO., a Kansas corporation; AMERICAN INVESTORS LIFE INSURANCE COMPANY, INC., a Kansas corporation; NATIONAL WESTERN LIFE INSURANCE COMPANY, a Colorado corporation; DOE DEFENDANTS I-XXX; ROE CORPORATIONS I-XXX, inclusive.<br><br>Defendants.<br>_____ | 2:08-cv-78-RCJ-RJJ<br><br>**ORDER** |

Currently before the Court is Defendants' Daniel C. Cuddy Jr. and Personnel Benefits Group, Inc.'s Motion for Clarification (#79). The Court heard oral argument on June 20, 2011.

## DISCUSSION

Plaintiffs Andrea Sommers and Harry Sueishi, as Guardians of Edith Self an adult ward, (collectively referred to herein as "Plaintiffs") filed a Complaint in this action on January 18, 2008. In their Complaint, Plaintiffs assert that they are seeking to "halt the use of unfair and abusive practices by Defendants in marketing and selling unsuitable annuity policies to senior

citizens." (Complaint (#1) at 2). According to Plaintiffs, "Defendants designed a scheme specifically to exploit and prey upon the finances of vulnerable senior citizens." Id. Plaintiffs further assert that "Defendants accomplished their scheme by utilizing the deceptive marketing of estate or financial planning services in order to obtain the seniors' financial information." Id.

Plaintiffs assert that the Defendants' alleged fraudulent scheme began to target Edith Self ("Self") in 1999. Id. at 5. According to Plaintiffs, Defendants Daniel C. Cuddy, Jr. ("Cuddy") and Personnel Benefits Group, Inc. ("PBG") "identified Self as a lonely, mentally unfit, elderly widow, with no immediate family members." Id. Thereafter, according to Plaintiffs, the Defendants "began a sophisticated and fraudulent scheme to defraud Self by gaining her trust" with the purpose of gaining access to "Self's substantial assets and property." Id. Based on these allegations, Plaintiffs filed suit asserting claims for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq.; (2) violations of Nevada consumer protection laws; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) bad faith; (6) fraudulent misrepresentation; (7) negligent misrepresentation; (8) fraudulent inducement/fraud; (9) civil conspiracy; and (10) unjust enrichment.

Following the filing of Plaintiffs' Complaint, Defendants Cuddy and PBG filed a Motion to Compel Arbitration and Stay Proceedings (#36) on May 8, 2008. Defendants Aviva USA Corporation, Aviva Life and Annuity Company, Amerus Annuity Group Company, and American Investors Life Insurance Company (collectively referred to herein as the "Aviva Defendants") also filed a Motion to Compel Arbitration and Stay Proceedings (#43). Defendant National Western Life Insurance Company ("National") filed a Joinder to the Motions to Compel Arbitration and Stay Proceedings (#39).

On March 30, 2009, the Court entered an Order (#62) granting the foregoing motions to compel arbitration. In its Order, the Court noted that Defendants moved to compel arbitration pursuant to the Federal Arbitration Act and the alleged agreements entered into between the parties. According to the Court, Defendants provided evidence of agreements

signed by Self that contained arbitration provisions. These agreements were executed by Self in 2002 and 2003. Plaintiffs challenged the alleged agreements on the basis that Self was "mentally unfit" at the time she signed the contracts and that the entire agreements were in "question and under intense suspicion." The Court stated that it was "clear from Plaintiffs' argument that Plaintiffs [were] challenging the enforcement of the contract as a whole and not just the arbitration provision." (Order (#62) at 5). The Court noted that Plaintiffs argued "that Self lacked the mental capacity to enter into any of the agreements at the time they were executed, and that Self was coerced into signing the agreements." Id. Based on Plaintiffs' argument, the Court found that under Supreme Court authority, the Court was required to direct the parties to proceed to arbitration because Plaintiffs challenged the validity of the entire agreement and not just the arbitration clause.

Following the Court's Order, Plaintiffs moved this Court for reconsideration on December 31, 2009. Upon reconsideration, the Court found that, as a matter of contract, the agreement between the parties did not create "a duty to arbitrate the issue of whether Edith Self had the mental capacity to enter into an agreement with the Defendants." (Order (#78) at 6). The Court noted that the arbitration provision at issue stated that "all controversies that may arise between the parties *concerning performance or breach* of this Agreement . . . shall be determined by arbitration." (Order (#78) at 6). Based on this language, the Court held that "Edith Self's mental capacity to enter into a contract does not relate to the performance or breach of the agreement." *Id.* at 6-7. Thus, "whether a contract was entered into between Self and the Defendants is a matter for the Court to decide." *Id.* at 7.

In their motion for clarification, Defendants state that based on the Court's order, they understood that the Court intended to summarily proceed on the issue of Edith Self's mental capacity under Section 4 of the FAA. After determining that issue, the Court would then determine whether it should compel arbitration. Plaintiffs, on the other hand, argue that the Court's order provides that the entire proceeding, including the underlying causes of action, should proceed before the Court. (Opp'n to Motion for Clarification (#80) at 2). According to Plaintiffs, Section 4 of the FAA does not apply, "and the case, as a whole, should be litigated

3

pursuant to the Federal Rules of Civil Procedure." *Id.*

As noted in this Court's previous Order, the Federal Arbitration Act ("FAA") provides that agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA provides for the petition to a district court for an order compelling arbitration when a party fails to arbitrate under an agreement. Under Section 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Under that provision, "[i]f the making of an arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* If it is found that "no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." *Id.* However, if it is found "that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." *Id.*

In this matter, the Court clarifies its order to hold that the claims asserted in Plaintiffs' Complaint are to be determined by the Court. As noted in the Court's previous Order (#78), the arbitration provision relates specifically to controversies arising between the parties on the issues of performance or breach of the agreements. The claims for relief asserted by Plaintiffs, on the other hand, involve RICO, breach of fiduciary duty, bad faith, fraudulent misrepresentation, negligent misrepresentation, fraud, civil conspiracy and unjust enrichment. Because Defendants have not tied these claims to the performance and breach of the agreements at issue, the Court does not need to compel arbitration under the FAA.

///

///

///

///

4

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Court GRANTS the Motion to Clarify its Order (#79) and finds that the arbitration provision does not relate to the claims asserted by Plaintiffs, and litigation on the underlying claims shall commence before the Court.

DATED: This 5th day of July, 2011.

_____
United States District Judge