**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANDREA SOMMERS and HARRY SUEISHI, as Guardians of EDITH SELF, an Adult Ward,

    Plaintiffs,

v.

DANIEL C. CUDDY, JR., et al.,

    Defendants.

2:08-cv-78-RCJ-RJJ

**ORDER**

Currently before the Court is a Motion to Dismiss Counts 1, 2, 6, 8, 9 and 10 (#96). The Court heard oral argument on January 20, 2012.

**BACKGROUND**

In January 2008, Plaintiffs Andrea Sommers and Harry Sueishi, as guardians of Edith Self, an adult ward (collectively "Plaintiffs") filed a complaint against Defendants Daniel Cuddy, Jr. ("Cuddy"), Personnel Benefits Group, Inc. ("PBG"), and National Western Life Insurance Company (collectively "Defendants").[1] (Compl. (#1) at 1). Cuddy was the president, secretary, treasurer, and director of PBG. (*Id.* at 3). Plaintiffs alleged that Defendants had designed a scheme specifically to exploit and prey upon the finances of vulnerable senior citizens by using deceptive marketing of estate or financial planning services in order to obtain the senior citizens' financial information. (*Id.* at 2). After obtaining that information, Defendants would target the senior citizens as prospective purchasers of deferred annuities and life insurance

---

[1] The parties filed a stipulation to dismiss Defendants Aviva USA Corporation, Aviva Life and Annuity Company, AmerUs Annuity Group Co., and American Investors Life Insurance Company, Inc. from this case with prejudice. (Stip. to Dismiss (#110) at 1-2).

policies. (*Id.*). Plaintiffs alleged that, during the time that Defendants had sold Self annuities and life insurance policies, Defendants knew, or should have known, that Self suffered from dementia and/or some other medical condition which caused her to lack the mental capacity to understand and enter into an agreement. (*Id.*).

Plaintiffs alleged the following. (*Id.* at 5). In 1999, Cuddy targeted, befriended, and directly solicited Self, who lived alone in a retirement community. (*Id.*). Cuddy and PGB had identified Self as a "lonely, mentally unfit, elderly widow, with no immediate family members" and then began a scheme to defraud her by gaining her trust by posing as a caretaker and "son" to gain access to her assets and property. (*Id.*). Cuddy and PGB had abused their positions as financial planners to "coerce" Self into giving them money to invest in deferred annuities that did not mature until far after Self's life expectancy. (*Id.*). Between 2000 and 2003, Defendants "coerced" Self to invest a total of $257,139.74 in a deferred annuity. (*Id.*). Defendants knew that Self was "elderly, mentally unfit, extremely lonely, financially unsophisticated and was unlikely to live long enough for the annuity to mature," but sold Self the annuity for their own personal financial gain. (*Id.*).

Plaintiffs further alleged the following. (*Id.* at 6). In 2000, Cuddy and PBG coerced Self to invest a total of $55,000 in one deferred annuity and $11,098.56 in another. (*Id.*). Between 1999 and 2002, Cuddy and PBG coerced Self to purchase one life insurance policy with a supposed death benefit of $100,000 and another life insurance policy with a supposed death benefit of $250,000. (*Id.*). Self had to pay an initial premium of at least $70,760 for the policies. (*Id.*). Defendants had misled Self into believing that the policies were a smart financial and estate planning decision, even though she had no heirs. (*Id.*). Defendants caused Self damages in the amount of $673,238.83 plus monthly premiums, finance charges, penalties, and reasonable interest. (*Id.* at 7).

Plaintiffs alleged the following causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et. seq.*; (2) violation of Nevada Consumer Protection Laws, NRS §§ 598.0915-0925; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) bad faith; (6) fraudulent misrepresentations; (7)

negligent misrepresentation; (8) fraudulent inducement/fraud; (9) civil conspiracy; and (10) unjust enrichment and imposition of constructive trust. (*Id.* at 7-28).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do." *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

## DISCUSSION

Cuddy and PBG file a motion to dismiss counts 1, 2, 6, 8, 9, and 10 with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Mot. to Dismiss (#96) at 2). Defendant National Western Life Insurance filed a joinder to Cuddy's Motion to Dismiss. (Joinder (#102)).

**I.    First Cause of Action:  RICO Claim**

Defendants assert that Plaintiffs fail to plead a RICO violation. (Mot. to Dismiss (#96) at 4).  Specifically, Defendants assert that Plaintiffs fail to plead the elements of conduct, enterprise, and a pattern of racketeering. (*Id.* at 5-6).  Defendants also argue that Plaintiffs fail to plead mail and wire fraud with Rule 9(b) particularity. (*Id.* at 7-10).

Plaintiffs filed a response and Defendants filed a reply. (Opp'n to Mot. to Dismiss (#104);  Reply to Mot. to Dismiss (#108)).

To plead a federal civil RICO claim, a plaintiff must demonstrate: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de*

4

*Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

To satisfy the element of "conduct," a defendant "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). Conduct requires an element of direction. *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008). The defendant need not be "upper management" to conduct the enterprise's affairs, as an enterprise is "'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves*, 507 U.S. at 184, 113 S.Ct. at 1173. However, simply providing services to the enterprise without an element of direction is insufficient. *Walter*, 538 F.3d at 1249.

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc). A plaintiff pleads an enterprise through allegations of "an ongoing organization, formal or informal," and by allegations that "the various associates function as a continuing unit." *Id.* at 549. An organization is ongoing if it "is a vehicle for the commission of two or more predicate crimes." *Id.* at 552 (quotation omitted). Allegations that the organization existed over a two-year time span suffice to allege a continuing unit. *Id*. at 553. Where the plaintiff alleges an associated-in-fact enterprise, the plaintiff need not allege "any particular organizational structure, separate or otherwise." *Id*. at 551.

A plaintiff establishes a pattern of racketeering activity by showing the participants in the enterprise committed at least two acts of racketeering. 18 U.S.C. § 1961(5). To prove a pattern of racketeering activity, the plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Predicate acts are related if they have similar "purposes, results, participants, victims, or

methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240, 109 S.Ct. at 2901 (quotation omitted).

Racketeering activity includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Racketeering activity also includes a variety of specified federal crimes, including mail and wire fraud. *Id*. § 1961(1)(B). To state the elements of wire or mail fraud, the plaintiff must allege (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the mails or wires in furtherance of the scheme; and (3) the defendants acted with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp*., 358 F.3d 616, 620 (9th Cir. 2004); *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003). The mails or wires are used in furtherance of a scheme even if use of the mails or wires is not an "essential element" of the fraudulent scheme, so long as it is "a step in the plot." *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004) (quotation omitted).

In this case, Plaintiffs state a claim for a RICO violation. The Court finds that the collective allegations are sufficient to state a claim. The allegations clearly allege a RICO enterprise and a joint scheme to defraud among the named Defendants. Additionally, Plaintiffs have alleged a common purpose to deceive and fraudulently sell to persons without competence, ability to understand, or appropriately analyze or refuse. The Court denies the motion to dismiss this claim.

**II.     Second Cause of Action: Violation of Nevada Consumer Protection Laws**

Defendants argue that Plaintiffs fail to plead their second cause of action for deceptive trade practices with sufficient particularity. (Mot. to Dismiss (#96) at 10). In response, Plaintiffs assert that they have plead their claims with sufficient particularity. (Opp'n to Mot. to Dismiss (#104) at 18).

Pursuant to Nevada Revised Statute § 598.0977, an elderly person or a person with a disability who suffers damage or injury as a result of a deceptive trade practice may

commence a civil action against any person who engaged in the practice to recover the actual damages suffered by the elderly person or person with a disability, punitive damages, if appropriate, and reasonable attorney's fees. Nev. Rev. Stat. § 598.0977. The Nevada Revised Statutes provide several definitions of "deceptive trade practices" including "knowingly mak[ing] any other false representation in a transaction." Nev. Rev. Stat. § 598.0915(15). As such, a plaintiff must plead a deceptive trade practices claim with Rule 9(b) particularity. *See Weinstein v. Mortg. Capital Assoc., Inc.*, 2011 WL 90085, *4 (D. Nev. 2011).

In this case, Plaintiffs plead deceptive trade practices with sufficient particularity. Plaintiffs alleged that Defendants had engaged in deceptive trade practices between 2000 and 2003. (*See id.* ¶¶ 21, 63-75). Additionally, Plaintiffs alleged that Defendants had sold Self deferred annuities and life insurance that were unsuitable for her financial needs, issued age exemptions without performing a complete investigation, ignored company protocols, and sold life insurance policies with intent to cancel the policies before Self's death. (*See id.* ¶ 64). As such, Plaintiffs state a claim for deceptive trade practices with Rule 9(b) particularity. The Court denies the motion to dismiss this claim.

**III.  Sixth & Eighth Causes of Action:  Fraudulent Misrepresentations & Fraudulent Inducement/Fraud**

Defendants argue that Plaintiffs fail to plead their fraud claims with Rule 9(b) specificity. (Mot. to Dismiss (#96) at 12-13). Plaintiffs argue that they have plead their fraud claims with particularity. (Opp'n to Mot. to Dismiss (#104) at 20-21).

The Court finds that Plaintiffs have pled their fraud claims with sufficient particularity and denies the motion to dismiss these claims.

**IV.  Ninth Cause of Action: Civil Conspiracy**

Defendants argue that Plaintiffs fail to plead a claim for civil conspiracy to commit fraud with Rule 9(b) particularity. (Mot. to Dismiss (#96) at 13-14). Plaintiffs argue that they have properly plead a civil conspiracy claim. (Opp'n Mot. to Dismiss (#104) at 21-22).

To establish a claim for civil conspiracy to defraud in Nevada, a plaintiff must plead (1) a combination of two or more persons who, by some concerted action, intend to accomplish

an unlawful objective for the purpose of harming another; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages resulting to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles & Public Safety*, 110 P.3d 30, 51 (Nev. 2005), *overruled on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 672 n.6 (Nev. 2008). "[A]n underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.*; *see also Villa v. Silver State Fin. Serv., Inc.*, 2011 WL 1979868, *9 (D. Nev. 2011) (finding that the plaintiffs could not state a valid claim for civil conspiracy to defraud when the plaintiffs failed to state any valid fraud-based cause of action).

In this case, Plaintiffs state a claim for civil conspiracy to defraud. Here, Plaintiffs make allegations that Defendants offered lavish incentives or high commissions to their sales force, sold life insurance policies to elderly individuals and cancelled the policies before the insured died, and disregarded their own internal deferred annuity senior citizen age exemption protocols. (*See* Compl. (#1) ¶ 134). As such, the Court denies the motion to dismiss the ninth cause of action.

**V.    Tenth Cause of Action: Unjust Enrichment and Imposition of Constructive Trust**

Defendants argue that Plaintiffs cannot maintain a claim for unjust enrichment because there are annuity and insurance contracts. (Mot. to Dismiss (#96) at 14-15). Defendants also argue that Plaintiffs cannot maintain a claim for constructive trust because there is an adequate remedy at law. (*Id.* at 15).

In response, Plaintiffs argue that Defendants will be unjustly enriched if they are permitted to retain Self's funds and argue that a constructive trust should be established over the money Self paid to Defendants, including annuity and life insurance premiums, commissions, service charges, and other fees, expenses, and charges imposed by Defendants. (Opp'n to Mot. to Dismiss (#104) at 23).

The Court finds that when fraud in the inducement is alleged and the contract is void or voidable as a matter of law, unjust enrichment and constructive trust are appropriate remedies. As such, the Court denies the motion to dismiss these claims.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion to Dismiss Counts 1, 2, 6, 8, 9 and 10 (#96) is DENIED.

DATED: This _ 2nd _ day of February, 2012.

_____
United States District Judge